FILED

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| HEITECH SERVICES, INC.<br>8400 Corporate Drive<br>Suite 500<br>Landover, Maryland 20785<br><br>Plaintiff,<br><br>v.<br><br>FRONT ROWE, INC.<br>3201 Jermantown Road<br>Suite 660<br>Fairfax, Virginia 22030<br><br>Serve: Horace McClerklin<br>    1940 Duke Street<br>    Suite 200<br>    Alexandria, Virginia 22314<br><br>ATRON ROWE<br>13321 Balamoral Heights Place<br>Clifton, Virginia 20124<br><br>KAREN ROWE<br>13321 Balamoral Heights Place<br>Clifton, Virginia 20124<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

2014 JUN 16 P 2: 39

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Case No. 1:14CV739-jcc-TCB

### COMPLAINT

Plaintiff, HeiTech Services, Inc. ("HeiTech"), by counsel, states the following Complaint against defendants Front Rowe, Inc. ("FRI"), Atron Rowe and Karen Rowe:

## PARTIES AND JURISDICTION

1.      HeiTech is a Maryland corporation with its principal place of business located at 8400 Corporate Drive, Suite 500, Landover, Maryland 20785. HeiTech is a federal programs and technology solutions provider.

2.      Upon information and belief, FRI is a Virginia corporation with its principal place of business located at 3201 Jermantown Road, Suite 600, Fairfax, Virginia 22030.

3.      Upon information and belief, Atron Rowe is a resident of the Commonwealth of Virginia, Fairfax County, residing at 13321 Balamoral Heights Place, Clifton, Virginia 20124. Upon information and belief, Mr. Rowe is the Vice President of FRI.

4.      Upon information and belief, Karen Rowe is a resident of the Commonwealth of Virginia, Fairfax County, residing at 13321 Balamoral Heights Place, Clifton, Virginia 20124. Upon information and belief, Mrs. Rowe is the President of FRI.

5.      The amount in controversy is in excess of $75,000 exclusive of interest and costs, and this action is between citizens of different states.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b)(1) as the defendants, FRI, Antron Rowe and Karen Rowe, reside in this judicial district.

## SUMMARY

8.      Atron Rowe and Karen Rowe are a husband and wife who own and operate FRI.

9.      In July of 2012, FRI (as prime contractor) and HeiTech (as subcontractor) entered into a subcontract pursuant to which the parties agreed to work together to perform scanning and digitization work for the United States Department of Labor ("DOL"). Under the subcontract, HeiTech was to be paid based on the total number of pages scanned for DOL.

10.     This litigation arises out of the intentional misrepresentations and misconduct of Atron Rowe and Karen Rowe during the performance of the subcontract.  Specifically, Atron Rowe and Karen Rowe intentionally concealed and misrepresented the actual number of pages scanned for DOL.  FRI (through Atron and Karen) billed DOL for one amount of pages, while at the same time reporting to HeiTech that a significantly lesser number of pages had been scanned.

11.     Upon information and belief, Atron Rowe and Karen Rowe engaged in this scheme of intentional concealment and misrepresentation in order to retain payments in excess of $280,000 for their own personal benefit.

12.     Moreover, not only did Atron and Karen conceal the actual number of pages scanned from HeiTech, but FRI then failed to pay HeiTech for numerous invoices based on the significantly (and improperly) reduced output numbers.

## FACTUAL BACKGROUND

13.     FRI was the prime contractor on Contract Number DOLJ121A21854 (the "Prime Contract") with DOL.  Under the Prime Contract, FRI was to provide document scanning and digitization work for DOL.

14.     On or about July 12, 2012, FRI entered into a subcontract (the "Subcontract") with HeiTech, pursuant to which HeiTech agreed to provide labor and equipment in support of the Prime Contract work.

15.     Pursuant to Article C.04 and Attachment A of the Subcontract, HeiTech was to be compensated at fixed rates per page, based on FRI's total scanned page production output for the Prime Contract.  Specifically, HeiTech was to be paid 49% of the Prime Contract revenues, which billings and revenues were based on production output.

3

16.     During the course of the Subcontract, FRI periodically informed HeiTech of the total number of pages scanned and HeiTech relied on the reports from FRI to prepare its Subcontract invoices.

17.     Specifically, between August 2, 2012 and April 7, 2014, Karen Rowe sent HeiTech 21 emails, pursuant to which she advised HeiTech of the production output upon which HeiTech was to base its invoicing.  Copies of the email reports from Karen Rowe are attached hereto as Exhibits 1-21.

18.     Atron Rowe was aware of the production outputs reported to HeiTech by Karen Rowe.

19.     Pursuant to Article C.02 of the Subcontract, FRI agreed to pay HeiTech for services delivered under the Subcontract upon FRI's receipt of payment from DOL.

20.     Based on the production outputs reported by Karen Rowe, on or about July 8, 2013, HeiTech submitted Invoice 854012 in the amount of $31,725.45 to FRI for services provided by HeiTech under the Subcontract.  A true and correct copy of Invoice 854012 is attached hereto as Exhibit 22.  The services invoiced in 854012 were accepted by both FRI and DOL and, upon information and belief, FRI has been paid by DOL.  FRI has failed to pay HeiTech for the services covered by Invoice 854012.

21.     Based on the production outputs reported by Karen Rowe, on or about August 6, 2013, HeiTech submitted Invoice 854013 in the amount of $29,997.31 to FRI for services provided by HeiTech under the Subcontract.  A true and correct copy of Invoice 854013 is attached hereto as Exhibit 23.  The services invoiced in 854013 were accepted by both FRI and DOL and, upon information and belief, FRI has been paid by DOL.  FRI has failed to pay HeiTech for the services covered by Invoice 854013.

4

22.     Based on the production outputs reported by Karen Rowe, on or about September 10, 2013, HeiTech submitted Invoice 854014 in the amount of $24,633.85 to FRI for services provided by HeiTech under the Subcontract. A true and correct copy of Invoice 854014 is attached hereto as Exhibit 24. The services invoiced in 854014 were accepted by both FRI and DOL and, upon information and belief, FRI has been paid by DOL. FRI has failed to pay HeiTech for the services covered by Invoice 854014.

23.     Based on the production outputs reported by Karen Rowe, on or about November 13, 2013, HeiTech submitted Invoice 854016 in the amount of $14,757.80 to FRI for services provided by HeiTech under the Subcontract. A true and correct copy of Invoice 854016 is attached hereto as Exhibit 25. The services invoiced in 854016 were accepted by both FRI and DOL and, upon information and belief, FRI has been paid by DOL. FRI has failed to pay HeiTech for the services covered by Invoice 854016.

24.     Based on the production outputs reported by Karen Rowe, on or about February 19, 2014, HeiTech submitted Invoice 854019 in the amount of $17,884.22 to FRI for services provided by HeiTech under the Subcontract. A true and correct copy of Invoice 854019 is attached hereto as Exhibit 26. The services invoiced in 854019 were accepted by both FRI and DOL and, upon information and belief, FRI has been paid by DOL. FRI has failed to pay HeiTech for the services covered by Invoice 854019.

25.     Based on the production outputs reported by Karen Rowe, on or about March 14, 2014, HeiTech submitted Invoice 854020 in the amount of $19,794.50 to FRI for services provided by HeiTech under the Subcontract. A true and correct copy of Invoice 854019 is attached hereto as Exhibit 27. The services invoiced in 854019 were accepted by both FRI and

DOL and, upon information and belief, FRI has been paid by DOL. FRI has failed to pay HeiTech for the services covered by Invoice 854019.

26.     Based on the production outputs reported by Karen Rowe, on or about April 9, 2014 HeiTech submitted Invoice 854021 in the amount of $27,516.49 to FRI for services delivered by HeiTech under the Subcontract. A true and correct copy of Invoice 854021 is attached hereto as Exhibit 28. The services invoiced in Invoice 854021 were accepted by both FRI and DOL and, upon information and belief, FRI has been paid by DOL. FRI has failed to pay HeiTech for the services covered by Invoice 854021.

27.     During the course of Subcontract performance, HeiTech started to have concerns that FRI and HeiTech were not achieving the expected levels of production output.

28.     HeiTech raised its concerns regarding lower than expected production outputs with Karen Rowe and Atron Rowe on several occasions. In response, Karen Rowe and Atron Rowe concealed the fact that FRI had been intentionally underreporting production outputs to HeiTech. Instead, Karen Rowe and Atron Rowe suggested that HeiTech prepare talking points for a future discussion with DOL regarding an increase in the Prime Contract rates based on lower than anticipated work loads.

29.     Later, after further questioning from HeiTech, Atron Rowe and Karen Rowe admitted that they had not been truthful. In fact, FRI and HeiTech had been achieving higher production outputs. The lower production numbers that Karen Rowe had reported were the result of Atron Rowe and Karen Rowe intentionally underreporting production outputs to HeiTech.

30.     HeiTech has received copies of billings that FRI submitted for payment to DOL. Based on FRI's actual billings to DOL (for which FRI was to be paid 49%), Karen Rowe and

6

Atron Rowe intentionally misrepresented production output to HeiTech in an effort to avoid making payments to HeiTech in the amount of $284,121.74.

31.     Moreover, not only did Karen Rowe and Atron Rowe intentionally conceal actual production outputs, FRI also failed to pay HeiTech at all for invoices that were submitted by HeiTech based on underreported production outputs.

32.     FRI's failure to pay HeiTech for work performed constitutes a material breach of the Subcontract.  As a result of FRI's material breach, HeiTech has ceased performance under the Subcontract.

33.     FRI continues to use HeiTech's property, including scanners, to perform under the Subcontract.  FRI has not paid HeiTech for the continued use of its property.

34.     Pursuant to Article E.05 of the Subcontract, FRI agreed to indemnify and hold harmless HeiTech "from and against any and all liability, loss, expense including reasonable attorney's fees, or claims for injury or damage arising out of the performance of this Agreement … to the extent such liability, loss, expense, attorneys' fees or claims for injury or damage are caused by or result from the negligent or intentional acts or omissions of Front Rowe, Inc., its officers, agents or employees."

## COUNT I – BREACH OF CONTRACT
### (Against FRI Only)

35.     HeiTech realleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36.     HeiTech fully performed under the Subcontract and all conditions precedent for payment to HeiTech have been met.

37.     FRI materially breached the Subcontract by failing to make payment to HeiTech for invoices 854012, 854013, 854014, 854016, 854019, 854020 and 854021.

7

38.     As a result of FRI's failure to make payment on invoices 854012, 854013, 854014, 854016, 854019, 854020 and 854021, HeiTech has incurred damages in the total amount of $166,309.62.

39.     FRI materially breached the Subcontract by underreporting the actual Subcontract production outputs.

40.     As a result of FRI's failure to accurately report Subcontract production outputs, HeiTech has incurred damages in the amount of $284,121.74, which is properly owed to HeiTech under the Subcontract based on actual production output.

41.     As a foreseeable result of FRI's material breaches of the Subcontract, HeiTech has incurred damages in the form of costs and liabilities for the lease of scanners for the Subcontract in the amount of $58,465.80.

42.     As a foreseeable result of FRI's material breaches of the Subcontract, HeiTech has incurred damages in the form of lost profits for the remaining term of the Subcontract, the exact amount of which will be proven at trial.

WHEREFORE, HeiTech Services, Inc. hereby requests that this Court enter judgment in its favor and against Front Rowe, Inc., in the amount of not less than $508,897.16, the exact amount to be proven at trial, together with pre- and post- judgment interest, costs, and attorney's fees, and that the Court award it such other and further relief that is deemed just and proper.

## COUNT II – FRAUD
### (Against All Defendants)

43.     HeiTech realleges and incorporates by reference paragraphs 1 through 34 as though full set forth herein.

44.     Between August 2, 2012 and April 7, 2014, Karen Rowe sent HeiTech 21 emails, pursuant to which she advised HeiTech of the production output for the Subcontract.

45.     In the emails, Karen Rowe intentionally and knowingly misrepresented production outputs for the Subcontract.

46.     HeiTech relied on Karen Rowe's production output reports in preparing its invoices, which invoices were submitted directly to Atron Rowe.

47.     All HeiTech invoices were submitted to Atron Rowe and, accordingly, Atron Rowe knew that Karen Rowe had underreported production outputs and knew that HeiTech had relied on the incorrect numbers in preparing its invoices. Atron Rowe, however, never alerted HeiTech to the issue.  Instead, Atron Rowe perpetuated the underreporting scheme by intentionally concealing the issue from HeiTech.

48.     Atron Rowe and Karen Rowe knew that the production outputs reported to HeiTech were erroneous because Atron Rowe and Karen Rowe submitted invoices to the DOL for the actual, higher production outputs.

49.     After HeiTech raised concerns about production output not meeting expected levels, Atron Rowe and Karen Rowe continued to intentionally mislead HeiTech.  Specifically, Atron Rowe and Karen Rowe advised HeiTech that the lower production levels were a result of lower than expected work from DOL and, accordingly, Atron Rowe and Karen Rowe suggested that HeiTech prepare talking points for a discussion with DOL regarding an adjustment to the Prime Contract price.

50.     Karen Rowe's falsified production output reports, Atron Rowe's failure to alert HeiTech of the falsified output reports, and Karen Rowe and Atron Rowe's misrepresentations as to why production was not meeting expected levels were all material and intentional misrepresentations.

51. HeiTech relied on the misrepresentations of Atron Rowe and Karen Rowe. Had Atron Rowe and Karen Rowe not concealed actual production outputs from HeiTech, and that HeiTech was entitled to payment of an additional $284,121.74, HeiTech would have stopped work under the Subcontract and not committed further resources to performance of the Subcontract work.

WHEREFORE, HeiTech Services, Inc. hereby requests that this Court enter judgment in its favor and against Front Rowe, Inc., Atron Rowe and Karen Rowe, jointly and severally, in the amount of $284,121.74, together with pre- and post- judgment interest, costs, and that the Court award it such other and further relief that is deemed just and proper.

Respectfully submitted,

HEITECH SERVICES, INC.

By Counsel

Brian F. Wilbourn
bwilbourn@pilieromazza.com
PILIEROMAZZA PLLC
888 17th Street, N.W., Suite 1100
Washington, D.C. 20006
PH: (202) 857-1000
FAX: (202) 857-0200

Of Counsel:

Pamela J. Mazza
pmazza@pilieromazza.com
PILIEROMAZZA PLLC
888 17th Street, N.W., Suite 1100
Washington, D.C. 20006
PH: (202) 857-1000
FAX: (202) 857-0200