IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| HEITECH SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14cv739 (JCC/TCB) |
| | ) | |
| FRONT ROWE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

This contract dispute is before the Court on Plaintiff HeiTech Services, Inc.'s Motion for Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Dkt. 31.] The Court heard the motion on December 18, 2014. No appearance was made on behalf of Front Rowe, Inc. ("FRI"). The Court heard oral argument of Plaintiff's counsel, who also represented to the Court that FRI's bankruptcy counsel did not contest the amount owed, and did not contest this motion for summary judgment. Thereafter, the Court granted Plaintiff's uncontested motion for summary judgment. This Memorandum Opinion memorializes the Court's reasons for doing so.

**I. Background**

On June 16, 2014, Plaintiff HeiTech Services, Inc. ("Plaintiff") filed a Complaint against Defendants FRI, Atron Rowe ("Atron"), and Karen Rowe ("Karen") (collectively

1

"Defendants") alleging Breach of Contract, as to FRI only, and Fraud, as to all Defendants. (Compl. [Dkt. 1] at 7-10.) On November 20, 2014, the parties appeared for a Final Pre-trial Conference. [Dkt. 28.] The same day, defense counsel's motion to withdraw as attorney for all Defendants was granted (Order [Dkt. 29] at 1), and the next day, Plaintiff filed the instant motion for summary judgment [Dkt. 31], with a memorandum in support (Pl.'s Mem. [Dkt. 34]). Plaintiff's counsel provided a Roseboro Notice in accordance with E.D. Va. Local Civil Rule 7(K) and certified that all necessary briefs were delivered via U.S. Mail to the now pro se individual Defendants and to FRI through its registered agent, Horace McClerklin. (Pl.'s Mot. for Summ. J. [Dkt. 31] at 2-3; Pl.'s Mem. at 31.)

On December 4, 2014, Plaintiff filed a Notice of Bankruptcy after being advised that individual Defendants Atron Rowe and Karen Rowe have filed Chapter 13 bankruptcy petitions in the United States Bankruptcy Court for the Eastern District of Virginia. [Dkt. 38.] Consequently, the Court entered an Order staying the case as to the two individual Defendants only. [Dkt. 40.] During the hearing on the summary judgment motion, Plaintiff's counsel represented through FRI's bankruptcy counsel that FRI was not filing for bankruptcy, that FRI did not oppose the motion for summary judgment, and that FRI did not oppose the judgment amount sought by Plaintiff.

2

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant [and] determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." Brock v. Entre Computer Ctrs., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

However, once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (stating the opposing party must "come forward with specific facts showing that there is a genuine issue for trial.") (citations and internal quotations omitted). Generally, contract interpretation is a subject particularly suited for summary judgment disposal. Bank of

Montreal v. Signet Bank, 193 F.3d 818, 835 (4th Cir. 1999) (citation omitted)).

Specifically in this Court, on summary judgment, the parties are required to list the undisputed material facts. E.D. Va. Local Civil Rule 56(B). "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Id. Similarly, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Here, because the non-moving Defendant failed to file an opposition to Plaintiff's statement of undisputed material facts, the Court may deem those undisputed facts admitted. JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007). The undisputed material facts are summarized as follows. (See Pl.'s Mem. at 2-11 (citations omitted).)

### III. Undisputed Material Facts

Since 1997, Atron and Karen Rowe have owned and operated FRI, a Virginia corporation with its principal place of business in Fairfax County, Virginia. On May 1, 2012, FRI

4

entered into a Prime Contract with the United States Department of Labor ("DOL") for document preparation work ("the Prime Contract"). Under the Prime Contract, DOL would pay FRI based on the number of pages scanned and digitized. Two months later, on July 1, 2012, FRI entered into a Subcontractor Agreement ("the Subcontract") with Plaintiff. Under the Subcontract, FRI would receive 51% of the revenue and Plaintiff would receive 49% of the revenue, based on the production output that FRI charged to DOL. While FRI received payment directly from DOL, it agreed to pay Plaintiff 49% of the revenue it received from DOL no later than five business days after payment. Under the Subcontract, Plaintiff's employees worked directly with FRI employees and were managed by FRI employees.

Starting in July of 2012 and continuing through May of 2014, Karen Rowe submitted invoices on behalf of FRI to DOL for work under the Prime Contract, based on the number of pages processed and billed during that particular month. During this period of time, in response to Plaintiff's request, Karen Rowe sent via e-mail the purported production output for the preceding month, but she did not send Plaintiff the Monthly Status Report or the invoice ultimately submitted to DOL.

During the period of time at issue, for at least 16 of the months, Karen Rowe knew the production output sent to Plaintiff was not the same production output FRI charged to DOL

5

under the Prime Contract rates. For the months at issue, Karen and Atron Rowe intentionally concealed from Plaintiff the true production output, which FRI reported on the invoices to DOL. Consequently, Plaintiff invoiced FRI for the lower, inaccurate pages that Karen Rowe sent Plaintiff via e-mail.

From July of 2012 through March of 2014, FRI submitted invoices to DOL in an amount totaling $1,404,563.86, and FRI received the same amount in revenue from DOL. But for the same period of time, Plaintiff submitted to FRI invoices totaling $404,124.49, or 28.8% of the total revenue earned by FRI under the Prime Contract with DOL, when it was in fact entitled to 49% under the Subcontract. Plaintiff submitted these invoices to FRI based on its reliance on the production output figures sent by Karen Rowe via e-mail.

Beginning in late 2013, FRI failed to make timely payments or failed to make payment at all to Plaintiff, despite the Subcontract requirement that such payments be received within five days of payment from DOL to FRI. During this time, FRI had timely received payment from DOL, but concealed this fact from Plaintiff when it asked for timely payment.

To date, seven invoices, totaling $166,309.62 remain unpaid from FRI to Plaintiff under the Subcontract. Additionally, under the terms of the subcontract, FRI owes Plaintiff an additional $284,111.81, or the unbilled portion of

6

49% of the total revenue received from DOL. On March 31, 2014, the Subcontract was terminated due to FRI's failure to pay invoices owed and the concealment of its invoices to DOL. At the end of May of 2014, the Prime Contract terminated. Plaintiff lost $55,337.20 in revenue for the months of April and May of 2014 because of the termination of the Subcontract.

### IV. Analysis

#### A. Breach of Contract

First, Plaintiff claims it is entitled to judgment as a matter of law on its breach of contract claim in the amount of $505,758.63. (Pl.'s Mem. at 12.) This includes: (1) $166,309.62 in unpaid invoices; (2) $284,111.81 in under-reported production outputs; and (3) $55,337.20 for Plaintiff's lost revenue expectancy in the months of April and May of 2014. (Id.) Plaintiff argues it is undisputed that FRI breached the Subcontract by failing to pay Plaintiffs amounts owed, as detailed above. (Id.)

In Virginia, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) resulting injury or harm to the plaintiff. Filak v. George, 594 S.E.2d 610, 614 (2004). Here, the undisputed evidence shows Defendant FRI entered into the Subcontract with Plaintiff. (Pl.'s Mem. Ex. 3 [Dkt. 34-4].)

7

FRI failed to pay amounts owed to Plaintiff under the Subcontract, in violation of the Subcontract. (Id. at 12.) The only question is the quantification of the resulting harm, or damages, to Plaintiff.

1. Unpaid Invoices

FRI "admits that it has not paid HeiTech the invoiced amount [for the seven invoices at issue]. Front Rowe admits that DOL has paid Front Rowe for the full amount of the invoice as alleged. Front Rowe has acknowledged its responsibility to pay the amount due HeiTech based upon payment from DOL, and Front Rowe will pay that amount to HeiTech." (Answer ¶¶ 20-26 [Dkt. 9] (admitting authenticity of Exhibits 22-28 showing unpaid invoice amounts).) Moreover, FRI specifically admits that it owes $166,309.62 for unpaid invoices. (Id. at ¶ 38 ("Front Rowe, and not defendants Karen and Atron Rowe, admits that it owes the amounts stated in paragraph 38 [$166,309.62].").) Accordingly, based on the undisputed evidence in the record and FRI's admissions, Plaintiff is entitled to judgment as a matter of law for the breach of contract claim in the amount of $166,309.62 for the seven unpaid invoices.

2. Under-Reported Production Outputs

Similarly, FRI admits, and the undisputed evidence shows, that Plaintiff is also entitled to judgment as a matter

8

of law for the breach of contract claim in the amount of $284,111.81 for under-reported production outputs. Specifically, "Front Rowe admits that it owes HeiTech the amounts stated in paragraph 40 [of the Complaint]." (Answer ¶ 40.) In other words, FRI admits that "[a]s a result of FRI's failure to accurately report Subcontract production outputs, HeiTech has incurred damages in the amount of $284,111.81, which is properly owed to HeiTech under the Subcontract based on actual production output." (Compl. [Dkt. 1] ¶ 40.) The evidence also supports this claim. (See Pl.'s Mem. Exs. 6-30, 99; see also Ex. 4 (conceding that FRI owed Plaintiff 49% of the total production output billed to the DOL).) Accordingly, Plaintiff is entitled to judgment as a matter of law on this claim in the amount of $284,111.81.

### 3. Lost Revenue Expectancy

After terminating the Subcontract on March 31, 2014, FRI was still paid $112,933.16 by DOL for the months of April and May of 2014. (Pl.'s Mem. Exs. 5, 99.) Plaintiff claims that as a matter of law, but for FRI's material breach, Plaintiff would have continued to earn revenue under the Subcontract; specifically 49% of the total revenue, or $55,337.25. (Id. at 17.) Plaintiff is also entitled to this revenue expectancy that was foreclosed by FRI's material breach and misrepresentation. See, e.g., LaVay Corp. v. Dominion Fed.

9

Sav. & Loan Ass'n, 830 F.2d 522, 529 (4th Cir. 1987) ("Lost profits are, of course, generally available to a plaintiff as damages in the successful prosecution of a claim for breach of contract."). Accordingly, Plaintiff is entitled to judgment as a matter of law on this claim in the amount of $55,337.20.

In sum, Plaintiff is entitled to judgment as a matter of law in the amount of $505,758.63 on the breach of contract claim for the reasons stated above. The Court will enter judgment in Plaintiff's favor on this claim.

### B. Fraud

Second, Plaintiff claims it is entitled to judgment as a matter of law on its fraud claim. In Virginia, the elements of common law fraud are: "[A] false representation of a material fact; made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; reliance on that false representation to [Plaintiff's] detriment; and resulting damage." Anthony v. Verizon Virginia, Inc., 758 S.E.2d 527, 534 (Va. 2014). The defrauded party's reliance on the misrepresentation must have been reasonable. Id. (citation omitted).

Here, Plaintiff again asks for monetary damages for FRI's failure to pay invoices and for FRI's under-reporting of production output numbers, just as it did for its breach of contract claim, this time under a theory of fraud. (Pl.'s Mem.

at 18-26.)  "[I]t goes without saying that the courts can and should preclude double recovery."  Equal Emp't Opportunity Comm'n v. Waffle House, 534 U.S. 279, 297 (2002) (citation omitted).  It is also well settled in this circuit that although Plaintiff may plead multiple claims for money damages based on, for instance, fraud and breach of contract, Plaintiff may only ultimately succeed on one basis.  See X-It Prods., LLC v. Walter Kidde Portable Equipment, Inc., 227 F. Supp. 2d 494, 524 (E.D. Va. 2002) ("Federal law also prohibits multiple recovery for one cause of action or set of injuries.") (citing cases); see also Winant v. Bostic, 5 F.3d 767, 775 (4th Cir. 1993).

Accordingly, because the Court has found that Plaintiff is entitled to judgment as a matter of law on the breach of contract claim as discussed above, it is not entitled to double recovery for the same harm under a theory of fraud.  Thus, the Court will deny Plaintiff's motion as to this claim.

### C. Piercing the Corporate Veil

Lastly, Plaintiff asks the Court to pierce the corporate veil of FRI and hold Karen Rowe and Atron Rowe personally liable for the breach of contract judgment entered against FRI.  (Pl.'s Mem. at 26-29.)  However, as of December 9, 2014, this matter is stayed against the individual Defendants, Karen Rowe and Atron Rowe, who have filed for bankruptcy.  Therefore, because the Court cannot take action against

defendants for which the instant litigation has been stayed, the Court need not address this issue and defers such a ruling.

## V. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment and enter judgment in its favor on the breach of contract claim in the amount of $505,758.63 against FRI.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| December 19, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |